UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-83-KSF

ALLSTATE INDEMNITY COMPANY                           PLAINTIFF

**OPINION & ORDER**

JAMES R. SHOOPMAN and
GLENDA SHOOPMAN                                         DEFENDANTS

\* \* \* \* \* \* \* \* \*

Currently before the Court are the parties' cross motions for partial summary judgment [DE # 16 and 17]. Both parties have filed their response [DE ##18 and 20], and these motions are ripe for review. For the reasons set forth below, the plaintiff's motion will be granted and the defendants' motion will be denied.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This is a coverage dispute involving the interpretation of certain exclusionary clauses and a "joint obligation" clause in an insurance contract. The plaintiff in this action, Allstate Indemnity Company ("Allstate"), filed its Complaint and Petition for Declaration of Rights pursuant to 28 U.S.C. § 2201(a) on March 11, 2009 [DE #1]. Allstate seeks a declaration of rights with respect to the proceeds of a policy of homeowners insurance issued by Allstate to the defendants, James and Glenda Shoopman (the "Shoopmans"). The Shoopmans have filed their answer and counterclaim [DE #5]. The parties' Joint Report of the Rule 26(f) Planning Meeting, filed April 14, 2009, has raised a legal issue requiring the Court's ruling prior to the need for any discovery [DE#14]. Specifically, the parties dispute the applicability of *American Hardware Mut. Ins. Co. v. Mitchell*,

1

870 S.W.2d 783 (Ky. 1993), to this case. As a result, the Court ordered the parties to submit contemporaneous motions on this issue [DE #15].

In compliance with the Court's order, the parties have filed their motions for partial summary judgment addressing the applicability of *Mitchell* to this case, and have stipulated to the following relevant facts:

1. Allstate issued a Homeowners Policy (#935673326) to Mr. and Mrs. Shoopman for a policy period of January 11, 2008 through January 11, 2009 ("the Policy"). The Policy covered their home at 356 Bratcher Lane, Berea, Kentucky ("the Home") and its Contents up to a limit of $185,374 under Coverage A (for the dwelling) and $139,030 under Coverage C (for the Contents). At all relevant times hereto the said Policy was in full force and effect.

2. Exhibit A (attached to the Stipulations) is a true and correct copy of the Policy.

3. On November 19, 2008 the Home was destroyed by fire.

4. Allstate currently has no information in its possession that Mr. and Mrs. Shoopman had any involvement in setting the fire or committed any actions which would constitute "intentional acts" barring coverage under the Policy.

5. Allstate believes the Home was destroyed by arson and that an "insured person" other than Mr. and Mrs. Shoopman may have been responsible, and/or that an "insured person" may have concealed or misrepresented material facts to Allstate. Mr. and Mrs. Shoopman believe that the Fire was accidental in origin and that the Fire was not the result of the intentional or criminal act of or at the direction of any "insured person" and deny that any "insured person" concealed or misrepresented any material facts to Allstate.

*See* Joint Stipulations of Fact [DE #16-3].

Allstate alleges that it has no obligation to pay the Shoopmans pursuant to the Policy if the Shoopmans' son, who they contend is an "insured person" under the Policy, was involved in setting the fire that burned down the Shoopmans' home and/or concealed or misrepresented any material fact regarding the fire to Allstate. Allstate argues that the Policy specifically excludes coverage for

losses resulting from the intentional acts of "any insured person," and it also contains a "joint obligation" clause stating that the acts or omissions of "an insured person" would be binding on other insured persons. Allstate contends that should the evidence show that the Shoopmans' son is an "insured person" under the Policy and that he burned the Shoopmans' house down and/or concealed or misrepresented any material fact to Allstate, then the Shoopmans cannot recover under their insurance policy with Allstate.

On the other hand, the Shoopmans argue that the "intentional act" exclusion in the policy is unenforceable absent a showing that a named insured was involved in setting the fire at the home. The Shoopmans' rely on *Mitchell*, wherein the Kentucky Supreme Court permitted an innocent spouse to recover under an insurance policy despite the fact that the loss was intentionally caused by her husband. *Mitchell*, 870 S.W.2d at 785.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c), summary judgment is appropriate if "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In this case, the parties have stipulated to the relevant facts and the issue before the Court is a question of law. Accordingly, the use of the summary judgment procedure is appropriate. *Finnell v. Cramet, Inc.*, 289 F.2d 409, 414 (6th Cir. 1961).

## III.  ANALYSIS

This action is based on diversity jurisdiction; therefore, the Court will apply the substantive law of Kentucky. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). In Kentucky, the interpretation of an insurance policy is a question of law. *Kemper Nat'l Ins. Companies v. Heaven*

3

*Hill Distilleries, Inc.*, 82 S.W. 3d 869, 871 (Ky. 2002). As noted by the Kentucky Supreme Court, "[i]t is a fundamental rule in the construction of insurance policy contracts that the contract shall be liberally construed and any doubts resolved in favor of the insured," *State Farm Mut. Auto. Ins. Co. v. Shelton*, 413 S.W.2d 344, 347 (Ky. 1967), and "exceptions and exclusions should be strictly construed to make insurance effective," *State Auto. Mut. Ins. Co. v. Trautwein*, 414 S.W.2d 587, 589. However, "[t]he terms of insurance coverage should not be extended beyond any clear or unambiguous limit." *Masler v. State Farm Mut. Ins. Co.*, 894 S.W.2d 633, 635-56 (Ky. 1995). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky.App. 2002). Nevertheless, courts "are not permitted to create an ambiguity where none exists even if doing so would result in a more palatable outcome." *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 836 (Ky. App. 2000).

The Policy at issue here contains several provisions that impact the Shoopmans' right to coverage. In the definitions section, the Policy defines "an insured person(s)" as "**you** and, if a resident of **your** household: a) any relative; and b) any dependent person in **your** care." [DE #16-4, pg.2][1] Under Coverage A of the Policy, Allstate excludes certain "intentional acts:"

> **Losses We Do Not Cover Under Coverages A and B:**
>
> We do not cover loss to the property described in **Coverage A-Dwelling Protection** or **Coverage B-Other Structures Protection** consisting of or caused by:
> . . .
> 9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:

---

[1] Whether or not the Shoopmans' son was a resident of the household at the time of the fire is a disputed issue of fact. However, the Court can decide the legal issue presented by the parties without resolving this factual dispute.

>    a) may be reasonably expected to result from such acts; or
>    b) is the intended result of such acts.
>
> This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of a crime.

[DE #16-4, pg.6]. Similarly, Coverage C of the Policy contains the same "intentional acts" exclusion to coverage, stating:

> **Losses We Do Not Cover Under Coverage C:**
>
> We do not cover loss to the property described in **Coverage C-Personal Property Protection** caused by or consisting of:
>                          . . .
> 9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
>    a) may be reasonably expected to result from such acts; or
>    b) is the intended result of such acts.
>
> This exclusion applies regardless of whether or not the **insured** person is actually charged with, or convicted of a crime.

[DE #16-4, pg.11]. The Policy also contains a "Concealment and Fraud" clause, which states that Allstate will not cover "any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance [DE #16-4, pg.2]. Finally, the Policy contains a "joint obligation" clause, which states, in pertinent part, as follows:

> The terms of this policy impose joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person.

[DE #16-4, pg.3-4].

Based on the Policy provisions outlined above, Allstate contends that the Policy clearly disclaims liability for intentional acts or fraud or concealment by "any insured." Thus, according to Allstate, even if Mr. and Mrs. Shoopman are "innocent," the intentional act exclusion or the

5

concealment and fraud provision would bar coverage if it is determined that their son, Michael Shoopman, is an insured person under the policy and played a role in starting the fire that damaged the Shoopmans' household or concealed or misrepresented any material facts about the fire from Allstate.

In support of its position, Allstate relies on *Bryant v. Allstate Insurance Company*, 592 F.Supp. 39 (E.D.Ky. 1984). The district court in *Bryant*, relying on Kentucky law, held that an innocent spouse was not entitled to insurance proceeds upon the destruction of her house due to her husband's arson because the policy excluded recovery for "[a]ny loss occurring while the hazard is increased in any means within the control or knowledge of an insured person." *Id*. at 41. The court noted that both Kentucky law and "sound public policy" hold "that an insurance policy is a contract much like any other contract, and if unambiguous it must be enforced according to its terms." *Id*. Although *Bryant* court expressed its sympathy for the plaintiff, it specifically found the provisions of the policy were as "clear as spring water" and therefore it did not see itself "as saddling the plaintiff with the consequences of a crime that she did not commit, but rather as only requiring the company to pay solely for those losses it insured and not for those which were clearly excluded by unambiguous language." *Id*. at 41-42.

On the other hand, the Shoopmans argue that the "joint obligation" clause of their Policy is ambiguous and unenforceable against them, and point to the Kentucky Supreme Court's decision in *Mitchell* as support for their argument that an innocent insured is entitled to recovery under a policy even though a co-insured intentionally caused the loss. Upon review of the pleadings and caselaw, the Court finds that the *Mitchell* case is clearly distinguishable and thus not controlling in this action.

The court in *Mitchell* held that the innocent spouse of an insured party who burned the couples' house down could recover under the parties' fire insurance policy. However, the insurance company in that case was not relying on any particular language in the policy like the express "joint obligation" clause in the Shoopmans' Policy, but rather argued that "for purposes of insurance, the interests insured were joint, arising from the Mitchell's legal identity as husband and wife." *Mitchell*, 870 S.W.2d at 785. The court rejected this argument, holding:

> Therefore, the proper rule should be that an innocent spouse should not be denied coverage under any policy of insurance **simply because of the marital relationship**. Since insurance policies are contracts of adhesion and interpreted most strongly against the party preparing same, **the policy could have been written to negate the collection of insurance by a co-insured.** An insurance policy which covers the interests of more than one insured should be considered several or separate as to each insured.

*Id.* at 785 (emphasis added).

Importantly, the *Mitchell* court recognized that while an innocent spouse cannot be denied coverage based solely on the marital relationship, an insurance contract may be drafted to do exactly that. *Id*. Here, the Shoopmans' Policy was clearly and ambiguously drafted so as to create joint obligations on the part of residents of an insured property. The Policy clearly defines an "insured person" to include all residents of the household, and excludes coverage for concealment or fraud and/or the intentional acts of "any insured." The "joint obligation" clause clearly states that the interests of all "insured persons" are joint. No reasonable person could find these provisions susceptible to different or inconsistent interpretations. *Cantrell Supply, Inc.*, 94 S.W.3d at 385.

Accordingly, the Court find that the *Mitchell* case is not controlling here. Allstate has clearly and unambiguously disclaimed liability for any intentional acts of "any insured" or when "any insured person" has concealed or misrepresented material facts. Furthermore, the Policy's "joint

obligation" clause clearly and unambiguously imposes joint obligations upon anyone defined as "an insured person" such that the acts of any "insured person" are binding upon anyone else so defined, including the named insured. In sum, the Shoopmans have failed to show, as a matter of law, that *Mitchell* is applicable to this matter. The Court thus holds that Allstate has no duty to pay any proceeds of insurance to the Shoopmans if "any insured person" under the parties' insurance policy engaged in or directed any intentional or criminal acts in setting the fire and/or concealed or misrepresented any material fact or circumstance to Allstate during the claim investigation, regardless of the "innocence" of any other person defined as "an insured person," including the Shoopmans, given the express language of the "joint obligation" clause, the "intentional act" exclusion, and the "concealment or fraud" exclusion provision in the Insuring Agreement portion of the Policy. Whether or not Michael Shoopman was "an insured person" under the Policy and whether or not he intentionally caused the fire and/or concealed or misrepresented any information about the fire to Allstate are questions of fact that remain to be decided.

### IV.   CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1)   Allstate's motion for partial summary judgment [DE #16] is **GRANTED**;

(2)   the Shoopmans' motion for summary judgment [DE #17] is **DENIED**;

(3)   Allstate has no duty to pay any proceeds of insurance to Shoopmans if "any insured person" under the parties' insurance policy engaged in or directed any intentional or criminal acts in setting the fire and/or concealed or misrepresented any material fact or circumstance to Allstate during the claim investigation, regardless of the "innocence" of any other person defined as "an insured person," including the defendants, given the express language of the "joint obligation" clause, the "intentional act" exclusion, and the "concealment or fraud" exclusion provision in

the Insuring Agreement portion of the Policy; and

(4)     this matter **REMAINS PENDING**, and the Court will issue a Scheduling Order by separate order.

This July 27, 2009.

Signed By:

*Karl S. Forester* KSF

United States Senior Judge