UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-83-KSF

ALLSTATE INDEMNITY COMPANY                                        PLAINTIFF

**OPINION & ORDER**

JAMES R. SHOOPMAN and
GLENDA SHOOPMAN                                                   DEFENDANTS

* * * * * * * * *

Currently before the Court is the plaintiff's motion for summary judgment or in the alternative partial summary judgment on the defendants' counterclaim. For the reasons set forth below, the motion will be denied in part and granted in part.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This is a coverage dispute and bad faith action involving a Homeowners Policy (#935673326) issued by Allstate Indemnity Company ("Allstate") to James and Glenda Shoopman (the "Shoopmans") for a policy period of January 11, 2008 through January 11, 2009 ("the Policy"). The Policy covered their home at 356 Bratcher Lane, Berea, Kentucky ("the Home") and its Contents up to a limit of $185,374 under Coverage A (for the dwelling) and $139,030 under Coverage C (for the Contents). At all relevant times hereto the Policy was in full force and effect.

The Home was substantially damaged by fire on November 19, 2008. Allstate conducted an investigation into the causes of the fire and the Shoopmans' claim for coverage and developed a suspicion that the fire was the result of arson and that an "insured person" was involved in the arson and/or concealed or misrepresented material facts relating to the loss. Allstate commenced this

action on March 11, 2009, asking the Court to declare that the Shoopmans are not entitled to coverage under the Policy. The Shoopmans filed a counterclaim alleging violations of the Unfair Claims Settlement Practices Act ("UCSPA") and the Kentucky Consumer Protection Act ("KCPA"), for bad faith in handling the claim for insurance.

Early in the case, the parties disagreed about whether the acts or omissions of the Shoopmans' son, Michael Shoopman, whom Allstate argued was an "insured person" would bar his parents from recovering under the Policy. The parties briefed the issue and, in an Opinion & Order dated July 28, 2009, the Court held that the Policy unambiguously disclaimed liability for any intentional act of any "insured person" or when any "insured person" has concealed or misrepresented material facts. Thus, Allstate has no duty to pay any proceeds to the Shoopmans if "any insured person" under the parties' insurance policy engaged in or directed any intentional or criminal acts in setting the fire and/or concealed or misrepresented any material fact or circumstance to Allstate during the claim investigation. The Court noted that whether Michael Shoopman was an "insured person" under the Policy and whether or not he intentionally caused the fire and/or concealed or misrepresented any information about the fire to Allstate are questions of fact and remain to be decided. Subsequently, the parties conducted discovery and Allstate filed this motion for summary judgment arguing that it is entitled to judgment in its favor because Michael is an insured person and he concealed or misrepresented material information. Allstate also argues that it is entitled to summary judgment on the Shoopmans' counterclaim for bad faith.

**II.   SUMMARY JUDGMENT STANDARD**

Under Rule 56(c), summary judgment is appropriate if "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 5(c). In ruling on a summary judgment motion, a federal court must determine whether the party opposing the motion has produced sufficient evidence to defeat a verdict at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

### III.   ANALYSIS

In this Motion for Summary Judgment, Allstate contends that Michael Shoopman is an "insured person" under the Policy as a matter of law and that he made misstatements about his father's mandolin, his criminal background and his activities on the day of the fire, matters that were "material" to the investigation, so Allstate does not have any obligation to pay the claim. Allstate also contends that the Shoopmans concealed material information by not removing the mandolin from the Proof of Loss, further justifying denial of their claim. Finally, Allstate argues that the Shoopmans' counterclaim for bad faith should be dismissed because it did not commit bad faith in investigating and handling the claim.

#### A.   Whether Michael Shoopman is an "Insured Person"

Allstate argues that Michael Shoopman resided in the Home at the time of the fire and is an "insured person" as a matter of law. The Shoopmans seem to agree that if Michael was a resident of their household at the time of the fire, he would be an "insured person" under the Policy, however, citing an affidavit by Michael and testimony by Glenda Shoopman, the Shoopmans contend that Michael lived in an apartment above the garage and was only temporarily staying in the Home to recover from injuries sustained in a motorcycle accident, so he is not an "insured person" under the Policy.

"Kentucky case law has previously defined residence as a 'factual place of abode or living

3

in a particular locality.'" *Perry v. Motorists Mutual Ins. Co.*, 860 S.W.2d 762, 764 (Ky. 1993)(quoting *Old Reliable Ins. Co. v. Brown*, 558 S.W.2d 190 (Ky. App. 1977). "Whether a new residence has been acquired or an old residence abandoned is dependent on the totality of all facts and circumstances." *Id.* Where different inferences can be drawn from disputed facts, intent is a question of fact and not of law. *Id.* at 765. Examining the evidence in the light most favorable to the Shoopmans, the non-moving party, a reasonable juror could conclude that Michael was not living in his parents' household at the time of the fire and was just temporarily staying there. Since the evidence supports more than one inference upon which reasonable minds could differ, summary judgment is inappropriate on this issue and the motion will be denied.

      B.      **Material Misstatements**

Allstate argues that Michael Shoopman misrepresented facts and concealed pertinent information about the fire related to his father's mandolin, his criminal background and his activities on the day of the fire which were "material" to the investigation. Since the Court has determined that there is an issue of fact as to Michael's status as an "insured person," whether he made any material misstatements may not be relevant to this case and is certainly not determinative of the matter. Thus, it is unnecessary for the Court to further consider this argument.

Allstate also argues that the Shoopmans, who are insured persons, made material misstatements so summary judgment is appropriate. Allstate contends that the Shoopmans included a Gibson mandolin on the Proof of Loss but did not tell Allstate that the mandolin had been pawned and did not notify Allstate that the mandolin had been recovered until months later. The Shoopmans claim that they were not aware that Michael pawned the mandolin until after Michael was arrested on May 12, well after they filed the Proof of Loss with Allstate, and that any alleged "misstatements"

4

on the Proof of Loss related to the mandolin did not affect Allstate's investigation. While material misrepresentations by an insured may justify denial of a claim, whether the Shoopmans actually misrepresented or concealed information and whether that information, even if misrepresented or concealed, was material to the investigation, are questions of fact and there is evidence supporting both parties' arguments. Since a reasonable juror could conclude that the Shoopmans did not make any misrepresentations to Allstate or that any misrepresentations were not material, this issue is not appropriate for summary judgment and the motion will be denied.

### C. Bad Faith Claim

Allstate argues that it is entitled to partial summary judgment on the Shoopmans' claims under the UCSPA and KCPA for bad faith in handling the insurance claim. The Court agrees.

To maintain a bad faith action against Allstate, whether premised on a common law theory or statutory violation, the Shoopmans must establish that the insurer: (1) is obligated to pay the claim under the terms of the Policy; (2) lacked a reasonable basis in law or in fact for denying the claim; and (3) either knew that there was no reasonable basis for denying the claim or acted with reckless disregard for whether a basis existed. *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). An insurer is entitled to challenge a claim if the claim is debatable on the law or facts. *Id.* A cause of action for statutory bad faith premised on a violation of the UCSPA may be maintained only if the evidence suffices to justify punitive damages. "In order to justify an award of punitive damages, there must be proof of bad faith sufficient for the jury to conclude that there was conduct that was outrageous, because of the defendant's evil motive, or his reckless indifference to the rights of others." *Motorists Mutual Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1997). Under this standard, "mere delay in payment does not amount to outrageous conduct absent some affirmative act of

harassment or deception." *Id.* at 452.

The Shoopmans contend that their bad faith claim is not based on an assertion that Allstate did not have a basis to conduct an investigation; rather, the Shoopmans argue that Allstate's claims process and investigation were flawed by intentionally incorrect assumptions and deliberate and willful conduct in derogation of their interests. Specifically, the Shoopmans claim that Allstate deliberately delayed a decision on their claim for more than one year and that the Special Investigation Unit adjustor, Richard Read, deliberately failed to comply with UCSPA notification requirements and deliberately failed to comply with many of Allstate's own adjusting procedures and fabricated reasons for his failure to do so.

The Shoopmans present some evidence of delay and technical violations of the UCSPA and there is evidence that Read was ill-mannered. To establish a claim for bad faith, however, the Shoopmans must present evidence, whether direct or circumstantial, from which a jury could reasonably conclude that the delay and statutory violations were intentional, systematic or based on some conscious decision. *See Mann v. The Hartford*, 2005 WL 1993441 at *5 (6th Cir. Aug. 18, 2005)(unpublished). They have not done so.

In support of their bad faith claim, the Shoopmans contend that Allstate was predisposed to blame Michael for setting the fire and cite various alleged missteps by Read, Christina Dudek (a private investigator hired by Allstate) and George Salyer (who completed an estimate of the damage to the Home). The Shoopmans argue that Allstate's conduct constitutes more than "mere negligence"and claim that these missteps are evidence of deliberate acts and reckless disregard for their rights as insured persons.

The Shoopmans claim that Allstate was predisposed to suspect Michael of arson and cite

testimony by Read that he questioned Michael's credibility because of his criminal history. They also claim that Read failed to comply with Allstate's corporate adjusting requirements by not evaluating the Proof of Loss within 3 days, not notifying the Shoopmans whether the Proof of Loss was accepted or rejected or advising them about what additional information was needed, not performing follow-up every 7-14 days for missing information, not updating the investigative status every 30 days and not documenting things in writing. They claim that Read could not explain the delay in the investigation and the reasons that he offered for the delay – James Shoopman's failure to supply Michael's phone records, James' failure to identify Michael's probation officer and Allstate's inability to locate Michael's girlfriend, Marisa Pearson, for an interview – are untrue. To show Allstate's "attitude" toward the Shoopmans, they provide testimony that Read laughed at James Shoopman during a January 19, 2009, phone conversation and testimony that Read lied during that call about having counsel research a legal issue. They also present evidence that Allstate failed to comply with Kentucky law on claims practices by missing various deadlines.

      The Shoopmans' assertions simply do not amount to outrageous conduct absent some affirmative act of harassment or deception. There "must be proof or evidence supporting a reasonable inference that the purpose of the delay was to extort a more favorable settlement or to deceive the insured with respect to applicable coverage. Here, there is no proof that any such conduct existed. Further, there is nothing about Read's investigation or the actions of Dudek or Salyer that tends to prove an evil motive or reckless indifference for the Shoopmans' rights. Read's bad manners or errors in judgment are not sufficient to establish a bad faith claim. *See Matt v. Liberty Mutual Ins. Co.*, 798 F.Supp. 429, 434 (W.D. Ky. 1991)(citing *Blue Cross & Blue Shield of Ky. v. Whitaker*, 687 S.W.2d 557 (Ky. App. 1985). Thus, the facts cited by the Shoopmans, taken

7

as true, are insufficient to support a bad faith claim. The Shoopmans proffer no evidence leading the Court to conclude that Allstate unreasonably believed that the claim is debatable on the facts. Further, the lapse of time between filing a claim and results of investigation and technical violations of procedures and rules are not enough to establish bad faith. Accordingly, Allstate's motion for summary judgment on the Shoopmans' counterclaim will be granted.

## IV.   CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** that Allstate's motion for summary judgment is **DENIED IN PART** and **GRANTED IN PART** in accordance with this Opinion & Order. The Shoopmans' counterclaim against Allstate for statutory bad faith is **DISMISSED WITH PREJUDICE**. Otherwise, this matter **REMAINS PENDING**.

This February 11, 2010.



Signed By:
*Karl S. Forester*  KSF
United States Senior Judge